UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

RUFUS WHITNEY,

                                        Plaintiff,

                -against-

THE CITY OF NEW YORK, DETECTIVE JAMES SANTANA (shield # 2699), POLICE OFFICER MARK XYLAS (tax # 948160), POLICE OFFICER ROMANDO JULIEN (tax # 949152), SERGEANT ADAN MUNOZ (shield # 1313), LIEUTENANT BARBARA FISCHER, DETECTIVE COURTNEY WALLACE (shield # 7125), SERGEANT LAUREL PHILLIPS (shield # 3870), LIEUTENANT MARK JABLONSKI, DEPUTY INSPECTOR SCOTT HENDERSON, JOHN DOES 1-10,

                                        Defendants.

**FIRST AMENDED COMPLAINT**

15 CV 5176 (AMD) (VMS)

Jury Trial Demanded

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

       1.      This is a civil rights action in which the plaintiff alleges that the City of New York and several New York City Police Officers violated his rights under 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution on two separate occasions. With respect to the first incident, which took place beginning on December 5, 2013, plaintiff alleges that defendants violated his constitutional rights by denying him a fair trial and maliciously prosecuting him. With respect to the second incident, which took place beginning on September 17, 2014, plaintiff alleges that defendants violated his constitutional rights by falsely arresting him, using unreasonable force on him, maliciously ransacking and damaging his property, denying him a fair trial and maliciously prosecuting him. Plaintiff also alleges that defendants, including the City of New York, which is vicariously liable for its employees' actions, violated his rights under state law by maliciously prosecuting him in connection with the

September 17, 2014 incident. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide his New York state law claims of malicious prosecution and vicarious liability which form part of the same case and controversy as plaintiff's federal claims under Article III of the United States Constitution.

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the City of New York is located in this District and because the incident in question occurred in this District.

## JURY TRIAL

5. Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## NOTICE OF CLAIM

6. In connection with plaintiff's state law claims of malicious prosecution and vicarious liability asserted in connection with the September 17, 2014 incident, a notice of claim was duly filed with the City of New York within 90 days of the dismissal of plaintiff's criminal case on March 12, 2015, more than 30 days have elapsed since such filing, and the City has not offered to settle plaintiff's state law claims.

7. This action is brought within one year and 90 days of the dismissal of plaintiff's criminal case on March 12, 2015.

## PARTIES

8. Plaintiff is a resident of the State of New York, County of Kings.

9. The City of New York is a municipal corporation organized under the laws of the State of New York.

10. The individual defendants are members of the NYPD. The individual defendants acted under color of state law and within the scope of their employment as members of the NYPD at all relevant times herein. The individual defendants are sued in their individual capacities.

## STATEMENT OF FACTS

11. In 2013 and 2014, plaintiff, a 53 year-old man, was living with his sister Joyce Whitney in her apartment located at 333 Patchen Avenue in Brooklyn, New York.

12. In the early morning hours of December 5, 2013, defendants Detective James Santana, Sergeant Adan Munoz, Lieutenant Mark Jablonski and other NYPD officers broke down the door to Joyce Whitney's apartment without presenting a warrant.

13. In the early morning hours of September 17, 2014, Police Officer Mark Xylas, Police Officer Romando Julien, Lieutenant Barbara Fischer, Detective Courtney Wallace, Sergeant Laurel Phillips, Deputy Inspector Scott Henderson and other NYPD officers broke down the door to Joyce Whitney's apartment without presenting a warrant

14. If the defendants had a warrant on the aforesaid occasions, the target of the warrant was Joyce Whitney, not plaintiff.

15. Upon entering the apartment during the aforesaid occasions, the defendants, acting in concert with other NYPD officers, pointed guns at plaintiff, threw him onto

the ground, pushed their knees into his back, and handcuffed him excessively tight, causing plaintiff to suffer pain, bruising and swelling. At no time did plaintiff resist arrest.

16. Instead of reasonably and thoroughly searching the apartment, the defendants maliciously and unnecessarily ransacked and damaged the apartment and plaintiff's property.

17. During both incidents, the defendants demanded that plaintiff tell them where drugs were located. Plaintiff responded that he does not use drugs and that he has no knowledge of any drugs being in the apartment.

18. The defendants told plaintiff that they knew that any drugs that were in the apartment belonged to Joyce Whitney, not him, and that if plaintiff told them where the drugs were located, they would arrest only Joyce.

19. The defendants also told plaintiff that if he did not tell them where the drugs were located, if any drugs were in fact found, "it's going to be yours, even if it's not yours."

20. When the defendants came to the residence on September 17, 2014, Joyce Whitney was not there. In order to get Joyce to return home so they could arrest her, the defendants threatened to arrest plaintiff unless he telephoned Joyce and told her that her apartment was on fire and to come home immediately.

21. Even though the defendants did not find drugs or any other contraband in plaintiff's possession on either of the aforesaid occasions, the defendants arrested plaintiff without probable cause and took him to the 81st Precinct.

22. In the 81st Precinct, the defendants, after both arrests, conspired to fabricate false charges against plaintiff for the purpose of justifying their unlawful searches, increasing their arrest activity and obtaining overtime compensation.

23. To this end, the defendants, acting in concert, misrepresented in police reports that they found crack cocaine residue in a straw located in the kitchen and marijuana in plaintiff's bedroom on December 5, 2013, and crack cocaine residue on a dresser located in the hallway on September 17, 2014. Those defendants who did not directly prepare the false police reports knew that their fellow officers were engaging in unlawful conduct, but they did nothing to stop it.

24. The truth is that there was no marijuana in plaintiff's bedroom and no crack cocaine residue in the kitchen on December 5, 2013. Moreover, there was no crack cocaine residue on a dresser located in the hallway on September 17, 2014; indeed, there was not a dresser in the hallway on September 17, 2014.

25. The defendants did not have the alleged crack cocaine and marijuana analyzed in the NYPD laboratory to determine if the substances they claimed they found was in fact crack cocaine and marijuana.

26. After the defendants completed the arrest paperwork in connection with plaintiff's two arrests, they arranged for plaintiff to be taken to Brooklyn Central Booking.

27. While plaintiff was incarcerated in Brooklyn Central Booking, the defendants, acting in concert, misrepresented to the Kings County District Attorney's Office that they found crack cocaine residue in a straw located in the kitchen and marijuana in plaintiff's bedroom on December 5, 2013, and crack cocaine residue on a dresser located in the hallway on September 17, 2014. Those defendants who did not initially meet with the District Attorney's

5

Office to commence criminal charges against plaintiff, knew that their fellow officers were engaging in unlawful conduct, but they did nothing to stop it.

28. In furtherance of having plaintiff prosecuted, the defendants, acting in concert, caused the creation of a criminal court complaint falsely charging plaintiff with possession of narcotics and commencing two separate prosecutions against plaintiff. Those officers who did not initially meet with the District Attorney's Office to cause the creation of the criminal court complaint knew that their fellow officers were engaging in unlawful conduct, but they did nothing to stop it.

29. In connection with the December 5, 2013 arrest, the defendants falsely charged plaintiff in the criminal court complaint with possession of crack cocaine residue which they claim they found in a straw in the kitchen and possession of marijuana they claim they found in plaintiff's bedroom.

30. In connection with the September 17, 2014 arrest, the defendants falsely charged plaintiff in the criminal court complaint with possession of crack cocaine residue which they claimed they found on a dresser located in the hallway.

31. Plaintiff was arraigned in Criminal Court, Kings County, approximately 24 hours after the two arrests, and was released both times on his own recognizance.

32. Had defendants charged plaintiff only with marijuana after the December 5, 2013 arrest, plaintiff would have been entitled to an adjournment in contemplation of dismissal or ACD, *on his own motion,* pursuant to §170.56 of the New York Criminal Procedure Law at his arraignment and there would have been no further prosecution. However, because of the false crack cocaine allegation, the prosecution of plaintiff continued after arraignment.

33. Plaintiff was required to appear in Criminal Court, Kings County, on numerous occasions in connection with the two separate prosecutions.

34. On September 30, 2014, prosecutors dismissed all criminal charges filed in connection with plaintiff's arrest on December 5, 2013.

35. On March 12, 2015, prosecutors dismissed all criminal charges filed in connection with plaintiff's arrest on September 17, 2014.

36. Defendants' illegal conduct caused plaintiff to suffer emotional distress, humiliation, embarrassment, substantial inconvenience, a loss of liberty, damage to his reputation, pain, physical injuries, property damage and financial loss, including money spent replacing the broken door locks.

## FIRST CLAIM

### (§ 1983; FALSE ARREST)

(Against All Defendants)

37. Plaintiff repeats the foregoing allegations.

38. Defendants, acting under color of state law, arrested and imprisoned plaintiff on September 17, 2014 without legal justification or probable cause in violation of § 1983 and the Fourth Amendment.

39. Defendants intended to confine the plaintiff, plaintiff was conscious of his confinement, plaintiff did not consent to his confinement, and plaintiff's confinement was not privileged or lawful.

40. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

41. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SECOND CLAIM

### (§ 1983; UNREASONABLE FORCE)

(Against All Defendants)

42. Plaintiff repeats the foregoing allegations.

43. On September 17, 2014, the defendants, acting under color of state law, used objectively unreasonable force upon plaintiff, or allowed objectively unreasonable force to be used on plaintiff, in violation of § 1983 and the Fourth Amendment.

44. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

45. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## THIRD CLAIM

### (§ 1983; UNREASONABLE SEARCH)

(Against All Defendants)

46. Plaintiff repeats the foregoing allegations.

47. On September 17, 2014, the defendants, acting under color of state law, subjected plaintiff to an unreasonable search by maliciously ransacking and damaging his property, or by allowing an unreasonable search to be conducted, in violation of § 1983 and the Fourth Amendment.

48. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

49. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FOURTH CLAIM

### (§ 1983; MALICIOUS PROSECUTION)

(Against All Defendants)

50. Plaintiff repeats the foregoing allegations.

51. Defendants, acting under color of state law, maliciously misrepresented to prosecutors after plaintiff's arrests on December 5, 2013 and September 17, 2014 that plaintiff was found in possession of narcotics and initiated two prosecutions against plaintiff which terminated in plaintiff's favor.

52. Defendants' conduct violated § 1983 and the Fourth Amendment.

53. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

54. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

### (§ 1983; DENIAL OF A FAIR TRIAL)

(Against All Defendants)

55. Plaintiff repeats the foregoing allegations.

56. Defendants, acting under color of state law, maliciously misrepresented to prosecutors after plaintiff's arrests on December 5, 2013 and September 17, 2014 that plaintiff was found in possession of narcotics in violation of § 1983 and the Sixth Amendment.

57. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

58. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SIXTH CLAIM

### (§ 1983; FAILURE TO INTERVENE)

(Against All Defendants)

59. Plaintiff repeats the foregoing allegations.

60. Defendants, while acting under color of state law, had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights under the Fourth and Sixth Amendments, but they failed to fulfill their constitutional obligation to intervene.

61. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

62. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM

### (MALICIOUS PROSECUTION UNDER N.Y. STATE LAW)

(Against All Defendants)

63. Plaintiff repeats the foregoing allegations.

64. Defendants, acting within the scope of their employment as members of the NYPD, maliciously misrepresented to prosecutors after plaintiff's arrest on September 17, 2014 that plaintiff was found in possession of narcotics and initiated a prosecution against plaintiff which terminated in plaintiff's favor.

65. Because the individual defendants were acting within the scope of their employment when they maliciously prosecuted plaintiff, the City of New York is vicariously liable to plaintiff.

66. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

67. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## **EIGHTH CLAIM**

## **(§ 1983; MUNICIPAL LIABILITY)**

(Against the City of New York)

68. Plaintiff repeats the foregoing allegations.

69. The City of New York is a "person" within the meaning of 42 U.S.C. § 1983.

70. The City of New York, through a policy, practice or custom, directly caused the constitutional violations suffered by plaintiff.

71. Upon information and belief, the City of New York, at all relevant times, was aware that the individual defendants and other members of the NYPD are unfit officers who have previously committed acts similar to those alleged herein, have a propensity for unconstitutional conduct, and/or have been inadequately trained.

72. Prior to violating plaintiff's constitutional rights, the individual defendants had been sued for civil rights violations in numerous lawsuits filed in both federal and state court.  The federal lawsuits are publicly available and can be accessed by searching the

defendants' names in the CM/ECF systems of the Eastern and Southern Districts of New York. The majority of the lawsuits filed against the defendants resulted in settlements.

73. Despite having the aforesaid knowledge of the individual defendants' prior misconduct, the City of New York exercised deliberate indifference by failing to take remedial action. The City failed to properly investigate the prior allegations of police misconduct made against the individual defendants and other members of the NYPD and failed to properly train, retrain, supervise, discipline and monitor the individual defendants and other officers like them.

74. The City of New York's failure to act resulted in the violation of plaintiff's constitutional rights as described herein.

75. The City of New York's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

76. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff requests the following relief jointly and severally against the defendants:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Attorney's fees and costs;

    d. Such other and further relief as the Court may deem just and proper.

DATED:  February 18, 2016

                                           _____/s/_____  
                                           RICHARD CARDINALE  
                                           Attorney at Law  
                                           26 Court Street, Suite # 1815  
                                           Brooklyn, New York 11242  
                                           (718) 624-9391